# Hamnett & Son's Appeal.

1. Land for which the title was in a wife's name, was sold by the sheriff; on distribution of the balance after payment of liens, a judgment-creditor of the husband claimed it, alleging that the land had been bought with money she held as guardian, and the husband being liable for her misappropriation, he had an equitable title to the land. *Held*, that the creditor had no standing in court on that ground.

2. The wards having a resulting trust in the land, the balance was theirs, and the wife had the right to receive it as guardian.

3. Under the circumstances, the costs of audit, &c., imposed on the excepting creditor.

November 12th 1872. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the District Court of *Allegheny county :* No. 67, to October and November Term 1872.

In the distribution of the proceeds of the sheriff's sale of real estate sold under a mortgage executed by John C. Smith and Adaline, his wife.

The sheriff made a special return that he had sold the land for $1475, and that in pursuance of the Act of April 10th 1862, re-

lating to the distribution of the proceeds of sheriffs' sales in Allegheny county, he reported a schedule of distribution by which it appeared, that after payment of costs, &c., and certain liens which were all that appeared to be against the property, he had appropriated $715.95, the residue of the proceeds of sale, to Mrs. Adaline Smith, the defendant.

J. Hamnett & Sons, judgment-creditors of John C. Smith, filed exceptions to the sheriff's return and distribution, averring that although the title to the land was in the name of Mrs. Smith, in contemplation of law it belonged to her husband, it having been conveyed to her during coverture; and that it was actually his, having been purchased and improved by him with his own funds.

On motion of the attorney of Mrs. Smith, W. F. Austin, Esq., was appointed auditor to take testimony and report distribution, together with the facts. The money was afterwards ordered into court.

The auditor reported:—

"* * * The defendants in this case are John C. Smith and Adaline Smith, his wife; the lot of ground and house sold under this writ and therein described is in the name of Adaline Smith, who claims the fund. The mortgage given in part payment of purchase-money, &c., was made by Smith and wife to Judge Mellon. Hamnett & Son are claimants on the fund to the extent of a judgment against John C. Smith for $165, with interest from October 14th 1870. John C. Smith did not appear; his residence is unknown, but an appearance by attorney was made in his behalf, who making no claim nor presenting any ground for claim, has not been considered by auditor as claimant. Adaline Smith, by a former marriage with John B. Bruner, had three children, of whom she was guardian, and as guardian, on April 25th 1867, entered into articles of agreement with Thomas Mellon, for the purchase of the lot from which this fund is realized, and for which she was to pay $400 in equal semi-annual payments. Deed to be made to her when all the purchase-money was paid. On October 22d 1868, a deed for the property was made to Mrs. Adaline Smith. I find that the reason of the deed being made to her individually and not as guardian, was that Mr. Mellon requested it, as he told her the mortgage as guardian would not be good. She wanted the deed in the children's name.

"A very common frame house was built, which cost, with other improvements, about $800.45, and the mortgage in this case was given for unpaid purchase-money, the balance on account of building materials furnished by Mellons, and ninety-five dollars in cash, with probably a small amount of interest, the mortgage being for $825.41, reduced subsequently to $599. The lumber and building materials from Mellons were given on the credit of Adaline Smith, she paying some $50 advance on it and the

balance along as she had the money; kept a pass-book with Mellons, in which the materials were entered and the cash credits thereon. She also paid other money for building, &c., to other parties. She also as payment for building furnished boarding to workmen of a carpenter, to about the amount of $60. The money necessary to keep the house during that time she borrowed, and afterwards repaid out of her own funds. John C. Smith paid bills to the aggregate of $30, including some $12.50 in shoemaking. Mrs. Smith gave him the money to pay these amounts, either at the time, before or after their payment. On the 1st day of December 1870, the unpaid balance of mortgage was purchased by G. H. Heuves, as an investment, the property was sold at sheriff's sale to him for the sum of $1475, and the residue, after payment of the mortgage, is the sum now in court for distribution. The question now is, from what source came the moneys to pay the building and improvements other than that portion included in the mortgage.

"Mrs. Adaline Smith, on her own account, and as guardian of her three children by Bruner, a deceased soldier, received for bounty, pension and back pay, $1071.41. From estate of Ephraim Bruner, her husband's father, $386.33, making a total sum of $1457.80, which she had independently of her husband, John C. Smith. In addition to the payments on house and lot, Mrs. Smith paid on mortgage $229.16, which was paid out of the last instalment of the money received from the Bruner estate. From the uncontradicted testimony of. Mrs. Smith, the auditor finds that all the money expended on and about the building of the house was paid by her out of the sums of money before enumerated; that Smith was a drinking man, insolvent, who did but little work at anything, and was mainly supported by his wife. The testimony of Mrs. Smith is corroborated by that of James Mellon, from whom the materials were purchased, and who acted as the agent of Thomas Mellon in the sale of the lot, who says everything was furnished by them on the credit of Adaline Smith, and that she paid them. Mrs. Smith's testimony is further supported by the fact that the different payments were made at or shortly after the time of receiving money from pension, Bruner estate, &c. Messrs. Hamnett & Son produced evidence to the effect that Smith had worked on the house and paid some small sums of money and done some shoemaking in payment for work on the property, but this is satisfactorily explained by the evidence of Adaline Smith, who says she furnished him with the money to pay these amounts.

"On the facts as found, the auditor is clearly of the opinion that the whole fund should be awarded to Adaline Smith personally, as her position as guardian renders her liable to account in the Orphans' Court for the moneys derived from the Bruner estate for her children, and that the exceptions to the sheriff's return should be

dismissed at the cost of the exceptants; and for the following reasons:

" 1. Where property is claimed by the wife, she must prove not only that she had the means of paying for it, but that she actually did pay for it. The evidence in this case shows conclusively that Adaline Smith did pay for this property and that Smith was insolvent and had no means of paying.

" 2. There is no evidence of any collusion between Smith and his wife to defraud the former's creditors; on the contrary, Adaline Smith swears she was not aware of the debts to Hamnett & Son; and again the account of Hamnett & Son was *not* for improvement of the property, but for leather, and it was certainly not purchased on the credit of this property, because at the date of their judgment they had constructive notice of the title, by the deed on record to Mrs. Smith. Seeing no reason why the sheriff's return should not be confirmed, the auditor reports distribution as therein made, and that the exceptants pay the costs of this audit."

Exceptions were filed to this report, and upon hearing it was referred again to Mr. Austin.

The auditor again reported : * * * " It was agreed by all parties interested that the testimony upon which the first report was based, should be considered in making up this report. After careful revision of that testimony, the auditor can see no reason why any change should be made in the finding of the facts, taken from first testimony. In addition to the facts found in first report, the auditor reports the facts as taken from evidence in this reference, as follows :—

" John C. Smith, one of the defendants, married Martha Boyd, in Washington county, Pa., about 24 years ago, and had by her four daughters. Ten years ago he sent his wife to her father's, in Washington county, from Steubenville, Ohio, where they then resided, came himself to Pittsburg, and in 1863 married Adaline Bruner, the other defendant, his first wife then and now living. Adaline Smith (or Bruner) did not know or suspect the existence of Smith's wife, as he informed her before their marriage that his wife had been dead two years, and she only discovered the fact within a few weeks back and subsequently to the date at which this matter was referred to the auditor for the second time. * * * The auditor finds that the marriage with John C. Smith is void.

" A further fact is found bearing, however, only on a matter of costs, and not affecting the merits of the case. John C. Smith, on January 24th 1871, made an affidavit claiming the fund and charging fraud against Adaline Smith and others, and that he had paid the sum of $600 towards building the house under an arrangement between himself and Adaline; she to purchase the lot and he would build the house. The purpose of offering this affidavit in evidence was to show that Hamnett & Son had a strong reason

for making claim on this fund. Except as to the question of costs recommended in first audit to be paid by Hamnett & Son, there is no reason why the former distribution should be changed. There is from the testimony taken in second reference the additional reason why Adaline Smith (Bruner) should have the fund, that never having been the wife of John C. Smith, his creditors claiming through him have no standing whatever. Mr. Duff claimed also that the money used in the purchase of this lot and house was, by Adaline's own showing, the property of her children, and that she, as guardian, embezzled it, and had therefore no property in it. Were this the case it would not benefit. Hamnett & Son, and if it were a question, the second marriage void, but a very small proportion (from Bruner estate) really belonged to Adaline as guardian, as she, and not the children, was entitled to the pension and bounty money, which would only be theirs in the event of a second marriage, and Adaline in receipting for it as guardian did so under under the mistaken impression that she was the wife of John C. Smith, and the $386 received from the Bruner estate, after eight years' support of the three Bruner children, certainly would be exhausted. Now, as to costs. * * * In addition to the legal presumption that the fund is the property of the husband, Hamnet & Son had a very good and further reason for making their claim, namely the affidavit of Smith himself, and it being conceded by all that John C. Smith is an exceedingly hard case, the supposition that the deed in his wife's name was for the purpose of defrauding creditors is natural. This as to costs on the first audit.

"The case of *this* report is different. Hamnett & Son's belief and assumptions of law were entirely overthrown in the first report, as they introduced no evidence throwing further light on the merits of the case in this reference, they ought in justice be made to pay the costs of this second reference.

"Distribution reported as follows :—

| | | |
|---|---|---|
| Amount in court . . . . . . . . | | $754.89 |
| Adaline Bruner, . . . . . | $649.39 | |
| Auditor's fee and certificate first reference paid | | |
| by J. C. Dicken, Esq., and now for his use, | 100.50 | |
| Joseph Ross, Prothonotary, copying first report | 5.00 | |
| | | ——$754.89" |

Mrs. Smith filed exceptions to this report, viz., that the auditor should have charged all the costs of the audit to Hamnett & Son, and awarded the amount in court to her. Hamnett & Son filed exceptions that the auditor had not awarded to them the amount of their judgment, and that he had imposed any of the costs on them.

After argument the court decreed that Hamnett & Son should

pay all the costs of the audit ($133.50), and with this alteration confirmed the report of the auditor.

Hamnett & Son appealed to the Supreme Court, and there assigned for error that the court did not decree the payment of their judgment from the fund in court, and decreed that they should pay the costs.

*L. B. Duff*, for appellants.

*J. C. Dicken*, for appellee.

The opinion of the court was delivered, November 22d 1872, by
SHARSWOOD, J.—The facts found by the auditor appointed to distribute the fund in court, are substantially these : Adaline Smith, the real or supposed wife of John C. Smith, having money in her hands, whether her own or as guardian of her children by her former husband, is, as we shall presently see, entirely immaterial, entered into articles with Thomas Mellon for the purchase of a lot of ground, and proceeded to erect a small frame house upon it. Afterward a deed was executed to her, and she gave a mortgage to the vendor for the unpaid purchase-money, and a balance due him for building materials furnished to her by him. All the money expended on or about the building of the house was paid by Mrs. Smith, no part of it having been contributed by her husband. The house and lot were sold under proceedings upon the mortgage, and after discharging that, the balance was paid into court for distribution. The appellants are judgment-creditors of John C. Smith, the husband or supposed husband of Adaline Smith. It is entirely unnecessary to enter upon any question as to the unlawfulness of the marriage, or whether it can be set up in this proceeding. It is very clear that upon the facts reported by the auditor the appellants had no claim upon the fund, but that it was rightly awarded to Adaline Smith. It has been maintained indeed that if the money used by Mrs. Smith belonged to her children, it was an embezzlement or misappropriation by her to invest it in the house and lot, for which her husband would be legally responsible, and that therefore it ought to be considered in law as belonging to him. The premises may perhaps be true, but the conclusion by no means follows. The utmost inference which could be made would be that upon payment by him to the wards of his wife, he would then have an equitable estate in the land. It may also be that as against Thomas Mellon, the mortgagee, with notice that it was the money of the children, they could follow it into the land, but the sheriff's sale without notice vested the legal title in the purchaser discharged of the secret trust resulting to them, and they are necessarily thrown upon the fund. Mrs. Smith is their guardian, and in that capacity, if it is

[Hamnett's Appeal.]

their money, she is entitled to receive it.   The appellants have no standing in court to contest the right on that ground.   The decree of the court below was therefore right in awarding the money to Adaline Smith or Bruner.

It may be that the costs of the first audit, if the matter had rested there, ought not to have been put upon the appellants. But they renewed their claim with full knowledge of the facts upon the second audit, and it was agreed that the testimony taken on the first audit should be received, and used on the second. Under these circumstances we think that the order by the court below, that the appellants should pay the costs of the audit, was also right.

> Decree affirmed, and appeal dismissed at the costs of the appellants.